Angie **BOND** et al., Plaintiffs,

v.

Clyde **HARRIS** as Chairman of Hotelmen's Committee for Hotel Users of Music, Hotel Association of New York City, Inc., H. H. Gerstein as Chairman of the Restaurant League of New York Committee for Restaurant Users of Music, Restaurant League of New York, Inc., Oscar Goodstein and Benjamin Harriman, Defendants.

United States District Court
S. D. New York.

March 26, 1964.

Godfrey P. Schmidt, New York City, for plaintiffs.

Drechsler & Leff, New York City, Sidney Orenstein, Mortimer Horowitz, Herbert Ferster, Bernard Ferster, New York City, of counsel, for defendants.

BONSAL, District Judge.

This is an action brought by plaintiffs as orchestra leaders in the single and steady engagement fields, on behalf of themselves and all orchestra leaders similarly situated, seeking to enjoin the defendants from subjecting them to the terms of certain "labor contracts" negotiated by defendants with Associated Musicians of Greater New York, Local 802, American Federation of Musicians (Local 802), which is not a defendant in this action. Plaintiffs have now moved for a preliminary injunction enjoining defendants during the pendency of the action from (a) executing any labor contract with any labor union which purports to represent plaintiffs' employees, and from (b) disseminating the contents of such labor contract among the restaurants, nightclubs and hotels represented or influenced by defendants where such labor contracts purport to cover plaintiffs' employees.

Defendant Hotelmen's Committee for Hotel Users of Music (Hotelmen's Committee) is composed of representatives of various hotels in New York City, and the defendant The Restaurant League of New York Committee for Restaurant Users of Music (Restaurant League Committee) is composed of representatives of various restaurants and nightclubs in New York City.

Defendants Hotel Association of New York City, Inc. and Restaurant League of New York, Inc. allegedly represent hotels, restaurants and nightclubs in New York City and have been instrumental

in establishing the Hotelmen's Committee and the Restaurant League Committee.

Defendants Goodstein and Harriman are allegedly the owners and operators of nightclubs in New York City.

The gravamen of the complaint is that the defendants Hotelmen's Committee and Restaurant League Committee purport to negotiate "labor contracts" with Local 802, covering the musicians or sidemen employed by plaintiffs in their orchestras in the single and steady engagement fields, and to foist these contracts upon plaintiffs. Plaintiffs, alleging that they are the "employers" of the sidemen, charge that the activity of the defendants is an interference with their right as employers to negotiate their own labor contracts with Local 802, to which both plaintiffs and the sidemen belong, and is an interference with their business generally. Plaintiffs further charge that under the provisions of the so-called labor contract foisted upon them, as aforesaid, hotels, restaurants and nightclubs have been making payments to the Local 802 Steady Engagement Welfare Fund in violation of Section 302 of the Labor-Management Relations Act of 1947 as amended (LMRA), 29 U.S.C. § 186.[1] Plaintiffs assert that neither the National Labor Relations Board nor the New York State Labor Relations Board has jurisdiction to act upon their grievances, and that this Court has jurisdiction under 28 U.S.C. § 1331 in that the matter in controversy exceeds the sum or value of $10,000 exclusive of interests and costs, and arises under the laws of the United States.

A second cause of action charges that the conduct of defendants, which is alleged to include participation in a common law conspiracy with labor unions to interfere with plaintiffs' business and with the relationship between plaintiffs and their clients, and to have the purpose or effect of suppressing competition, restricting access to a free market in musical services and fixing the prices of musical services, violates the Sherman and Clayton Anti-Trust Acts (15 U.S.C. §§ 1, 2, 15 and 26).

It appears that the practice by which the Committees for the hotels and restaurants have negotiated labor contracts with Local 802 for the sidemen originated following a strike in 1946 by Local 802 against hotels in New York City. Such a contract, dated March 23, 1960, is attached to the complaint, and the complaint alleges that defendants and the hotels, restaurants and nightclubs represented or influenced by defendants have insisted upon the use of a "Form B Contract" prepared and promulgated by the American Federation of Musicians of the United States and Canada for the purpose of imposing upon all orchestra leaders, including plaintiffs, the labor standards set forth in the March 23, 1960 contract in both the single and the steady engagement fields. The complaint alleges that the March 23, 1960 contract is about to be replaced by a new agreement which has already been negotiated. Plaintiffs seek to enjoin defendants from signing the new agreement and from disseminating the contract among the hotels, restaurants and nightclubs represented or influenced by defendants. In their answering papers defendants allege that the new agreement has already been signed and disseminated.

---

1. Plaintiffs contend that the following provision of Section 302 prohibits the payments defendants are making to Local 802, and that none of the exceptions in Section 302(c) are applicable to the payments:

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

* * * * *

"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;"

Several actions have been brought in this Court in recent years by orchestra leaders, including some if not all of the plaintiffs here, against Local 802 and the American Federation of Musicians of the United States and Canada.[2] Broadly speaking, these earlier actions involved either of two claims: one, that the unions violated Section 302 of the L.M.R.A. by exacting payments from the plaintiff orchestra leaders as employers in the single engagement field, including a 1½% wage tax and a 10% traveling surcharge, or two, that the unions conspired with certain orchestra leader-employers to restrict competition and fix prices in violation of the federal anti-trust laws by means of employment quotas and price lists.

The Court of Appeals held in these actions that the unions' exaction of the 1½% wage tax and the 10% traveling surcharge violated Section 302 of the L.M.R.A., and it affirmed a judgment permanently enjoining the unions from collecting these payments. Cutler v. American Federation of Musicians of United States and Canada, 316 F.2d 546 (2d Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (Dec. 9, 1963). The anti-trust claims have not yet been tried.

In these prior actions preliminary injunctions were sought. The Court of Appeals held that interlocutory injunctive relief was warranted with respect to the claims under Section 302, but was not warranted with respect to the anti-trust claims. Carroll v. American Federation of Musicians of United States and Canada, 310 F.2d 325 (2d Cir. 1962);

Id., 295 F.2d 484 (2d Cir. 1961); Carroll v. Associated Musicians of Greater New York, 284 F.2d 91 (2d Cir. 1960).

■ The reasons which justified the granting of preliminary injunctions in the earlier actions with respect to the alleged violations of Section 302 are not present here. If plaintiffs are correct in their contention that in the steady engagement field they, and not defendants, are the employers of the sidemen, the prohibitions of Section 302 are not applicable to defendants. Moreover, in the earlier cases one of the reasons for the grant of injunctive relief was that the payments, if illegal, subjected the orchestra leaders to criminal penalties. 295 F.2d at 487–488. Here plaintiffs are not themselves making the payments, but are seeking to prevent defendants from doing so.

■ The reasons which led the Court to deny preliminary injunctions with respect to the anti-trust claims are present here. These reasons are: (1) the presence of difficult questions of fact and law,[3] (2) the fact that the practices under attack are long-standing, (3) plaintiffs' acquiescence in the practices, (4) the absence of irreparable harm to plaintiffs, (5) the likelihood of irreparable harm to defendants and others, especially since substantial economic interests are related to and dependent upon these long-standing practices. Carroll v. American Federation of Musicians of United States and Canada (S.D.N.Y.1960) 33 F.R.D. 353; 42 CCH Lab.Cas. ¶ 16,948 (S.D. N.Y.1961).[4]

2. Including 60 Civil 1169, 2939, 4025 and 4926; 62 Civil 2552 and 4191. Cutler v. American Federation of Musicians of the U. S. and Canada, D.C., 211 F.Supp. 433, 34 F.R.D. 253; Carroll v. American Federation of Musicians of the U. S. and Canada, D.C., 33 F.R.D. 353; 183 F. Supp. 636; 206 F.Supp. 462.

3. Defendants argue that: (1) Local 802 is an indispensable party; (2) this Court lacks jurisdiction because the NLRB has either exclusive or primary jurisdiction over this action, since the action amounts in essence to a charge of an unfair labor practice against Local 802 for refusal to bargain collectively with plaintiffs, Section 8(b) (3), L.M.R.A. 29 U.S.C. § 158 (b) (3); (3) the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, prohibits the issuance of the injunction sought by plaintiffs; (4) the requisites of a class action are not established; and (5) the complaint fails to state a claim upon which relief can be granted.

4. The latter decision was reversed with respect to the denial of injunctive relief for the claim under Section 302, and was otherwise affirmed. 295 F.2d 484 (2d Cir. 1961) (see text below).

268

The Court of Appeals has twice expressly approved the reasoning of the above cases. In Carroll v. American Federation of Musicians of United States and Canada, 295 F.2d 484 at 486 (2d Cir. 1961), it stated: "These reasons for refusing interlocutory relief that would interfere with the long-established system for establishing wage scales and employment quotas appear entirely sound." And in a later opinion, Carroll v. American Federation of Musicians of United States and Canada, 310 F.2d 325 at 326–327 (2d Cir. 1962), reversing the grant of a preliminary injunction, the Court stated:

"Previous applications for preliminary injunctions in these two actions were denied by other district judges on the ground that plaintiffs' showing was insufficient to warrant the grant of provisional relief that would disrupt practices of long standing among musicians and thereby cause economic loss which would be wrongful yet irreparable if plaintiffs did not prevail. The last such denial of interlocutory relief, by Judge Palmieri, was specifically approved by this Court, Carroll v. American Federation of Musicians, 295 F.2d 484, 486 (2 Cir. 1961). Although this history did not preclude Judge Levet from issuing a preliminary injunction, orderly judicial administration should demand proof of a change in circumstances sufficient to call for a different result. * * * [I]t is as doubtful as ever whether plaintiffs can bring themselves within the antitrust laws, escape the prohibition against labor injunctions in the Clayton Act, 29 U.S.C. § 52, and the Norris-La-Guardia Act, 29 U.S.C. §§ 101–115, and avoid primary jurisdiction of the National Labor Relations Board. In this area, where courts must reconcile the sometimes conflicting policies of four acts of Congress, two of which explicitly deprive a Federal court of 'jurisdiction' to issue an injunction, [citations omitted], there is special need for restraint in granting interlocutory relief."

As in the cases previously discussed, plaintiffs here have failed to show irreparable harm to themselves. Moreover, the granting of a preliminary injunction would be likely to result in widespread hardship to others.

Plaintiffs' motion for a preliminary injunction is denied.

So ordered.