Ben CUTLER, Dan Terry, Ralph Flanagan, Marty Levitt, Vic Ash, Claude Garreau (d/b/a Allen Meritt), and Angie Bond, et al., Plaintiffs,

v.

AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA and Associated Musicians of Greater New York, Local 802, Defendants.

United States District Court
S. D. New York.
June 17, 1964.

Godfrey P. Schmidt, New York City, Anthony J. Shovelski, Andrew P. O'Rourke, New York City, of counsel, for plaintiffs.

McGoldrick, Dannett, Horowitz & Golub, New York City, Emanuel Dannett, Herbert D. Schwartzman, Eugene Mittelman, New York City, of counsel, for defendant American Federation of Musicians of United States and Canada.

Ashe & Rifkin, New York City, David I. Ashe, New York City, of counsel, for defendant Associated Musicians of Greater New York, Local 802.

LEVET, District Judge.

Plaintiffs presently seek to establish "defendants' liability for the legal fees of, * * * Godfrey P. Schmidt," their attorney. The disposition of the present motion can be adequately understood only with a knowledge of the entire course of litigation between these plaintiffs and defendants.

The plaintiff Ben Cutler together with many of his co-plaintiffs in this and a variety of actions are members of the defendant unions and orchestra leaders in both the single and steady engagement fields.[1] Alleging themselves to be the employers of the union-member-musicians in their orchestra, they seek to operate free and clear of certain union regulations.

The present case is itself a sequel to Carroll v. American Fed. of Musicians, 206 F.Supp. 462 (S.D.N.Y.1962), aff'd 316 F.2d 574 (2d Cir. 1963) [hereinafter Carroll 302 action], in which orchestra leaders, similarly circumstanced to the plaintiffs in this action, sought to enjoin the parent Federation and its Local 802 from demanding from the plaintiffs the Federation's 10% traveling surcharge, Local 802 1½% tax and contributions to Local 802's Single Engagement Welfare Fund, which the Carroll plaintiffs contended were violative of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186. Although ultimately holding that the Carroll plaintiffs lacked standing to challenge the taxes, I found the method of collecting these taxes, surcharges and contributions violative of Section 302.

Basically, the Federation's 10% traveling surcharge required Federation members who performed "miscellaneous out-of-town engagements" to be paid but not to actually receive an amount equal to 10% of the minimum wage established by the Local in whose jurisdiction the engagement takes place. The Federation By-Laws required either the Local or the orchestra leader to collect the 10% and transmit it to the Federation. The Federation retained 5/10ths of the traveling surcharge, an equal amount was returned to the Local in whose jurisdiction the engagement was played and the remaining 3/10ths was returned to the orchestra leader.

The present action followed shortly after the dismissal of the Carroll 302 action and was originally brought by Cutler

1. For a definition of these terms of art, see Cutler v. American Fed. of Musicians, 211 F.Supp. 433 (S.D.N.Y.1962), aff'd 316 F.2d 546 (2d Cir.), cert. denied 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963).

and six other named plaintiffs in their own behalf and as representatives of a class of all orchestra-leader-employers. After the granting of a preliminary injunction, the parties stipulated that, based upon the trial record of the Carroll 302 action and other material documents, "this court shall make findings of fact and conclusions of law and shall direct the entry of appropriate judgment but solely with respect to (a) the cause of action asserted by the plaintiff Ben Cutler, and (b) the class action alleged in the complaint herein." The resulting final judgment enjoined the defendants from collecting the challenged taxes from the plaintiff Cutler in the single engagement field and dismissed the class action alleged in the complaint. The judgments on both the preliminary and permanent injunctions were affirmed by the Court of Appeals, 316 F.2d 546 (2d Cir.), and certiorari denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963). Successive applications for intervention, made both during and after the appellate proceedings, have burgeoned the ranks of the plaintiffs to their present number of over 100.

In the light of the Cutler decisions, the Federation decided at its annual convention in June, 1963 to revise its fiscal policies by abolishing the 10% traveling surcharge and substituting therefor an increase in the per capita dues of its approximate 282,000 members. A group of union members, including the plaintiff Cutler, successfully enjoined that portion of the convention's Resolution No. 11 which increased the per capita dues as violative of Section 101(a) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. § 411. Wittstein v. American Fed. of Musicians, 223 F.Supp. 27 (S.D.N.Y.), aff'd 326 F. 2d 26 (2d Cir. 1963), cert. granted 376 U.S. 942, 84 S.Ct. 798, 11 L.Ed. 766 (1964). As part of Resolution No. 11, but unaffected by the Wittstein decision, was a provision which established "minimum wages for traveling engagements at 10% in excess of applicable local scale." Subsequently, the plaintiffs in this action and Wittstein sought unsuccessfully to enjoin this provision. Cutler v. American Fed. of Musicians, 34 F.R.D. 253 (S.D.N.Y.1964).

Simultaneous with the foregoing, the plaintiff Cutler, together with two of his co-plaintiffs in this case, successfully intervened in two companion actions brought by the original Carroll 302 plaintiffs challenging certain union regulations as violative of the anti-trust laws. Carroll v. American Fed. of Musicians, 33 F.R.D. 353 (S.D.N.Y.1963). The proposed intervenor's complaint sought a permanent injunction:

"(b) requiring defendants to terminate union memberships of all members who are orchestra-leader, employers."

The plaintiffs' attorney in all these cases has been Godfrey P. Schmidt, Esq.

The plaintiff Cutler is also President of the National Association of Orchestra Leaders (NAOL). The other officers are Eddie Wittstein, Vice-President, Joe Carroll, Secretary, and Charles Peterson, Treasurer, all of whom have been plaintiffs in one or more of these actions. Among NAOL's Board of Directors are Di Rienzo, Greco, Levitt and Kenton, all of whom have also been plaintiffs in one or more of these actions. NAOL itself is apparently a nationalized successor to Orchestra Leaders of Greater New York (OLGNY), a group which was a plaintiff in the Carroll 302 action and as to which I found, 206 F.Supp. at 464–465:

"2. Although plaintiff Orchestra Leaders of Greater New York ('OLGNY') is alleged to be an informal unincorporated association comprising at least 50 members of a class allegedly represented by plaintiffs Carroll and Peterson, I find that there is a lack of evidence establishing that OLGNY is an association representing orchestra leaders, that it is presently in existence, that it has any members other than Carroll and Peterson, that it has in any way been damaged or aggrieved by any conduct of defendant unions or

that it has any interest in these actions."

While apparently limited in membership, OLGNY filed several unfair labor practice charges against the Federation charging, among other things, that the defendants "force or require employers or self-employed persons, to wit, members of Orchestra Leaders of Greater New York to join a labor organization, to wit, Associated Musicians of Greater New York, Local 802, and American Federation of Musicians of the United States and Canada," (Ballard Aff. Ex. 5) and against Local 802 asserting that it "imposes minimums for all engagements in the single engagement field." (id. Ex. 19)

NAOL has recently also filed unfair labor practices charges against the defendants alleging the unilateral imposition of wage scales without collective bargaining. (Ballard Aff. Ex. 12) Ben Cutler, as President of NAOL, has written several letters to the Federation seeking the refund of previously collected surcharges and offering to collectively bargain with the union. (id. Exs. 14, 23) NAOL has also written, over the signature of Charles Peterson, several letters to other orchestra leaders and Locals of the Federation charging that certain taxes and their methods of collection are illegal. (id. Exs. 25, 26, 27, 29)

Recently, two other actions were begun, in both of which Cutler is a plaintiff. The first, Bond v. Harris, D.C., 228 F.Supp. 265, challenges certain contracts negotiated by Local 802 and the Hotel Association of New York City governing musical services to be performed in hotels. See 228 F.Supp. 265 (S.D.N.Y. 1964) In the other action, Kenton v. American Fed. of Musicians, 64 Civ. 1273, orchestra leaders seek the refund of monies previously collected by the Federation as traveling surcharges. .In both actions Godfrey P. Schmidt represents the plaintiffs.

The plaintiffs have limited their present application to counsel's work in the preparation and trial of the Carroll 302 actions, the obtaining of a final injunction with respect to the plaintiff Cutler in this action and the completion of the Wittstein case. (Schmidt, Jan. 8 Aff., pp. 6–7) It is stated that no claim beyond the present application will be made by plaintiffs or their counsel for any fees for legal work made necessary in completing the trial of this action.

I.

One begins with the rather well-settled rule recently reiterated by the Court of Appeals of this circuit, Fleisher v. Paramount Pictures Corp., 329 F.2d 424, 426 (2d Cir. 1964):

" * * * American courts have traditionally refused to include counsel fees in a losing party's bill of costs, except in the most extraordinary of instances, and have virtually never awarded such fees in an action at law. Every litigant, regardless of the seeming frivolity of his claims, is entitled to have them determined on their merits, and not to be 'taxed out of court.' "

This rather rigid rule has been somewhat relaxed by the "historic equity jurisdiction of the federal courts" to award counsel fees in exceptional cases. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (Frankfurter, J.) As the plaintiffs concede, the present application is not premised upon any statutory provision [2] and rests entirely upon the " * * authority of the chancellor to do equity

2. Compare, for example, the provision in Title V of the Landrum-Griffin Act, 73 Stat. 535, 29 U.S.C. § 501(b):
" * * * The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."
See Note, Counsel Fees For Union Officers Under the Fiduciary Provision of Landrum-Griffin, 73 Yale L.J. 443 (1964).

in a particular situation. * * *" Sprague, supra, 307 U.S. at 166, 59 S. Ct. at 780. The plaintiffs' claim is twofold. First, that the plaintiffs have created what is optimistically referred to in the affidavits as a "reimbursement fund" consisting of the monies defendant Federation unlawfully collected as "10% traveling surcharge." Second, that the plaintiffs by their action have not only benefited themselves, but also all orchestra-leader-employers, and, in fact, the parent Federation, its Locals and all its members.

## II.

■ The so-called "reimbursement fund" is alleged to consist of the monies "collected unlawfully by defendants since the time when decisions and judgments of this Court first gave to defendants authoritative notice that plaintiffs had properly construed Section 302 in the initial complaints against defendants." The short answer to this contention is that if the reimbursement fund consists of monies illegally collected by the defendants, that fund was not created or preserved by the plaintiffs, but, rather, accumulated over their strenuous objections and in spite of their efforts. It is difficult to visualize a fund being created by a judgment which permanently enjoins the defendants from collecting certain surcharges in a proscribed manner.

Furthermore, there is substantial doubt whether the Cutler decision established any fund by *stare decisis*. The Cutler decision was effectively limited to the plaintiff Cutler in the single engagement field. The decision did nothing to establish the rights of the over 100 intervenors, much less establish the rights of all orchestra-leader-employers, alleged to number over 5,000. As to many of these claims the Federation unquestionably has defenses, among which is lack of standing either as an employer or as a member of the Federation. In such circumstances, no fund within the meaning of the Sprague doctrine has been established. See Whittier v. Emmet, 108 U.S.App.D.C. 191, 281 F.2d 24 (1960),

cert. denied 364 U.S. 935, 81 S.Ct. 380, 5 L.Ed.2d 367 (1961).

Lastly, the three basic requirements established by the decisions charging counsel fees of successful litigants against a fund are absent here:

*First:* A definite earmarked fund must be unconditionally created, preserved or maintained as a result of plaintiffs' action. See, Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Buford v. Tobacco Growers' Co-Op Ass'n., 42 F.2d 791 (4th Cir. 1930); Wallace v. Fiske, 80 F.2d 897 (8th Cir. 1935); City of Wewoka v. Banker, 117 F.2d 839 (10th Cir. 1941); O'Hara v. Oakland County, 136 F.2d 152 (6th Cir. 1943); Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 248 F.2d 82, cert. denied Benton County, Or. v. Lafferty, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957); Doherty v. Bress, 104 U.S.App.D.C. 308, 262 F.2d 20 (1958), cert. denied 359 U.S. 934, 79 S. Ct. 649, 3 L.Ed.2d 636 (1959).

*Second:* The decision affecting the fund must establish rights in the fund. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777 (1939); Whittier v. Emmet, supra.

*Third:* The persons having an interest in the fund must expressly or impliedly accept the benefits derived from the plaintiffs' litigation. See Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940 (1886); Lea v. Paterson Sav. Inst., 142 F.2d 932 (5th Cir. 1944); Abbott, Puller & Myers v. Peyser, 75 U.S.App. D.C. 162, 124 F.2d 524 (D.C.Cir. 1941).

For the foregoing reasons, the plaintiffs' application based on the creation of a fund is denied.

## III.

■ With the possible exception of civil rights litigation, see Bell v. School Bd., 321 F.2d 500 (4th Cir. 1963), 77 Harv.L.Rev. 1135 (1964), no area is more susceptible to the salutary effects of the exercise of the chancellor's power to award counsel fees without the presence of a fund than litigation involving a member and his union. Primarily, this

litigation seeks solely equitable relief and traditionally pits an impecunious group of members against a solvent union with little expectation of a substantial monetary award from which to pay a counsel fee, even a contingent one. This recognition has prompted several courts to allow counsel fees to successful union members who through litigation have corrected union abuse even though they have not established a fund or conferred a pecuniary benefit upon the commonweal of the union. Murray v. Kelly, 14 App.Div.2d 528, 217 N.Y.S.2d 146 (1961), aff'd 11 N.Y.2d 810, 227 N.Y.S.2d 435, 182 N.E.2d 109 (1962); Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962); Fittipaldi v. Legaisse, 18 App. Div.2d 331, 239 N.Y.S.2d 792 (1963); Gilbert v. Hoisting & Portable Eng'rs, 384 P.2d 136 (Or.1963), cert. denied 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981 (1964). Cf. Grein v. Cavano, 61 Wash.2d 498, 379 P.2d 209 (1963). This development is in full keeping with the "historic equity jurisdiction of the federal courts." Sprague, 307 U.S. at 164, 59 S.Ct. at 779. However, "such allowances are appropriate only in exceptional cases and for dominating reasons of justice." id. 307 U.S. at 167, 59 S.Ct. at 780. It remains to determine whether this is such a case.

The plaintiffs allege that their actions have benefited not only themselves but also other orchestra-leader-employers, and, in fact, the Federation, its Locals and all its members. The monetary savings to other orchestra leaders resulting from their present freedom from these exactions is variously alleged to be in the millions. While one would little doubt the substantial savings to the plaintiffs themselves and those similarly circumstanced, including the more than 100 intervenors, there seems little reason to impose an additional liability on the defendants to pay counsel fees to a group whose action brought to themselves such affluent savings. Putting aside however, the benefit which the plaintiffs have brought upon themselves and those in similar positions, their claim of benefit to the Federation and its membership comes with somewhat of a hollow ring.

It is difficult to imagine that the Cutler decision was not at least a significant, if not the determinative, factor in the Federation's decision to revise its fiscal policies. While the Federation unquestionably had alternatives, "[t]he very fact that these reforms were made after the initiation of legal action, leads to the reasonable inference that such reforms were caused by the initiation of such legal action." Grein v. Cavano, supra, 379 P.2d at 215.

The Cutler decision held that Cutler, when acting as an employer in the single engagement field, violated Section 302 of the Labor Management Relations Act, as amended, 29 U.S.C. § 186, when he transmitted to the Federation the 10% traveling surcharge. Subsection (d) of the same section makes it a misdemeanor to violate the section. While the plaintiffs contend that their actions prevented potential criminal prosecution of their union, a mere reading of Section 186(d) makes clear that the criminality applies equally to both the employer and the union officials. See United States v. Roth, 2 Cir. June 5, 1964, 333 F.2d 450. [employers]; United States v. Holt, 2 Cir. June 5, 1964, 333 F.2d 455 [union official]. The plaintiffs were quite obviously substantially benefiting themselves by preventing their own, as well as their unions, potentially criminal conduct. While the law cannot but recognize as beneficial full observance of the law, cf. Abrams v. Textile Realty Corp., 97 N.Y. S.2d 492, 496 (Sup.Ct.1949), there exists no compelling reason to have the defendants pay counsel fees for such a mutual benefit.

The fiscal policy enacted after the Cutler decision reaffirmed the practice of paying traveling musicians 10% above scale. While this was an unquestioned benefit to the instrumentalists (sidemen) in traveling orchestras, the plaintiffs can claim little credit for this. Even assuming a casual relationship between the Cutler decision and this action of the

Federation, the plaintiffs attempted in this court to enjoin this provision.

In fact, the plaintiffs' claim that their actions benefited the membership of the union must be placed against the entire panorama of their actions. This action was not brought as a class action of the entire membership of the union, but as representative of orchestra-leader-employers. The plaintiff Cutler presently seeks to sever his membership in the union, the very group alleged to have benefited by his actions. As President of NAOL he has sought collective bargaining between himself and the union. NAOL has filed unfair labor practice charges against the defendants. Cutler and other plaintiffs have instituted a variety of actions challenging various practices of the union. The predecessor of NAOL, OLGNY, has similarly waged a campaign against the union which the plaintiffs allege they have presently benefited. No words more aptly express this controversy than those of the court in Lea v. Paterson Sav. Inst., 142 F.2d 932, 935 (5th Cir. 1944):

" * * * This melee, this long drawn out fight, this knock down and drag out fight, has none of the aspects of a class suit. The claim that its progress or result has afforded any basis for a finding that the consenting creditors who were locked in a death struggle with petitioner, were also consenting to representation by him, or that they have received such benefits from this long drawn out fight, that, though having counsel of their own, they must pay those who forced the fight on them and have carried it on so relentlessly, is wholly without foundation. That no one shall enrich himself at the expense of another is a good principle. To apply it here would, under the undisputed facts, be to run a good principle into the ground."

Cf. Gabrielson v. City of Long Beach, 56 Cal.2d 224, 363 P.2d 883 (1961).

IV.

"Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. * * * As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility." Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 166–167, 59 S.Ct. 777, 780 (1939).

There exists in this case no reason for this court to impose upon the defendants liability for plaintiffs' counsel fees. No fund was created or preserved. No benefits were conferred upon the defendants sufficient to warrant the exercise of the chancellor's discretion. However salutary may be the practice of awarding counsel fees to successful union members in benefiting their union in various ways, it would be the antimony of the rule to allow such fees to plaintiffs who, alleging they have benefited the commonweal are at the same time seeking to sever their membership and whose interests are at odds with the majority of members. For the foregoing reasons, the plaintiffs' motion is in all respects denied. Similarly, the defendants' request for their fees on this motion is denied since the motion cannot be deemed to be "unnecessary, groundless, vexatious and oppressive."

In view of the above determinations there is no necessity to pass upon the defendants' contentions that it was the Congressional desire to deny counsel fees in all actions under the Landrum-Griffin Act except those brought under Section 501.

The foregoing constitutes my Findings of Fact and Conclusions of Law, pursuant to Fed.R.Civ.P. 52(a).

Settle order on notice.