Marty **AMES** et al., Plaintiffs,

v.

**ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AFM, et al., Defendants.**

United States District Court
S. D. New York.
Jan. 19, 1966.
As Amended Jan. 28, 1966.

Godfrey P. Schmidt, New York City, for plaintiffs, Anthony J. Shovelski, New York City, of counsel.

Ashe & Rifkin, New York City, for defendant, Associated Musicians of Greater New York, Local 802, David I. Ashe, New York City, of counsel.

McGoldrick, Dannett, Horowitz & Golub, New York City, for defendant, American Federation of Musicians, Emanuel Dannett, Eugene Mittelman, New York City, of counsel.

Drechsler & Leff, New York City, Attorneys for defendants Hotelmen's Committee for Hotel Users of Music, Hotel Assn. of New York City, Inc. and Cerstein & Bock as trustees, Sidney Orenstein, New York City, of counsel.

Zelby & Burstein, New York City, for defendant, Harry H. Gerstein, Arthur Liberstein, New York City, of counsel.

LEVET, District Judge.

The plaintiffs in the above-entitled action move for a preliminary injunction enjoining the above-named defendants from—

"(i) Enforcing or applying LOCAL 802 MUSICAL ENGAGEMENTS WELFARE FUND and the provisions unilaterally made by defendant unions and applied by them and the other defendants with respect to or in connection with that Fund, until decision on the motion for preliminary injunction brought on by this Order to Show Cause;

"(ii) Imposing upon and applying to plaintiffs the other LOCAL 802 and AFM [American Federation of Musicians] Bylaws set forth in EXHIBIT E annexed to the complaint;

"(iii) Imposing upon plaintiffs the current 'Memorandum of Agreement' dated in December, 1963, or any part thereof, concluded between certain hotels, nightclubs and restaurants on the one hand and defendant LOCAL 802 on the other hand;

"(iv) Collaborating for the purpose or with the effect of requiring plaintiffs to renegotiate with their clients any written or oral contracts for a future musical engagement in order to make such contracts conform with the unilateral exactions or impositions contained in said EXHIBIT E;

"(v) Requiring orchestra-leader-employers and their clients to use the fictional, false and fraudulent 'Form B' contracts;

"(vi) Combining or collaborating in any way for the purpose or with the effect of visiting any reprisal or retaliation upon any plaintiff or any employee of any plaintiff, because of plaintiffs' participation in this action or because of plaintiffs' failure or refusal to comply with EXHIBIT E annexed to the complaint * * *."

## BACKGROUND

The history and background of this case insofar as set forth in certain decisions by this court may be ascertained from the following opinions:

Cutler v. American Federation of Musicians of United States and Canada and Associated Musicians of Greater New York Local 802, 211 F.Supp. 433 (S.D.N.Y.1962), aff'd 316 F.2d 546 (2nd Cir., 1963), cert. denied 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272; Carroll v. Associated Musicians of Greater New York, Local 802 and American Federation of Musicians of the United States and Canada, 235 F. Supp. 161 (S.D.N.Y.1963); Schwartz et al. v. Associated Musicians of Greater New York Local 802, 237 F.Supp. 149 (S.D.N.Y.1963), aff'd 340 F.2d 228 (2nd Cir. 1964); Cutler v. American Federation of Musicians of the United States and Canada and Associated Musicians of Greater New York Local 802, 62 Civ. 2552, opinion January 2, 1964, not reported (S.D.N.Y.); Cutler v. American Federation of Musicians of the United States and Canada and Associated Musicians of Greater New York Local 802, 62 Civ. 2552, opinion September 23, 1964, not reported (S.D.N.Y.); Farowitz v. Associated Musicians of Greater New York Local 802, AFM, 241 F.Supp. 895 (S.D.N.Y.1965); Carroll et al. v. American Federation of Musicians of United States and Canada et al., 241 F.Supp. 865 (S.D.N.Y.1965).

The basic difficulties here arise in large part from the ambivalent characters of the orchestra leaders as both employers and employees and from their consequent relationships to the union.

The papers upon which this motion is made include:

1. A complaint of 125 paragraphs which is endorsed by the attorney for plaintiffs and verified by eight of the individual plaintiffs. The complaint is anything but simple, concise and direct as required by Rule 8 of the Federal Rules of Civil Procedure. "It is indeed a veritable compendium of prolixity." See Associated Orch. Leaders of Greater Philadelphia v. Philadelphia Musical Society, 203 F.Supp. 755, 756 (E.D.Pa. 1962).

2. Certain affidavits of Ben Cutler, one of the plaintiffs herein.

3. An affidavit of the attorney for the plaintiffs.

## RELIEF SOUGHT UPON THIS MOTION

For the purpose of this motion, the immediate relief sought may be summarized as follows:

### 1. THE WELFARE FUND

An injunction against defendant Local 802 restraining it from enforcing the payments of $1.00 for each member, including the leader, to the Local 802 Musical Engagements Welfare Fund for each single engagement performance taking place within the jurisdiction of said Local and making the leaders responsible for collection of the contribution and payment into the fund.

### 2. FILING CONTRACTS

An injunction against Local 802 restraining enforcement of a section of the By-Laws (Article IV) making it a violation for a member (apparently including a leader) to fail to file properly executed contracts on official blanks furnished by the Local as specified by Article X of the By-Laws. This objection apparently relates to wage scales, the *"B" form contract* and the requirement for renegotiation of contracts under Exhibit E.

### 3. HOTEL AND RESTAURANT CONTRACTS

An injunction against the enforcement of the restaurant contract called "Memorandum of Agreement" with hotels, etc.

### 4. REPRISALS

An injunction against any reprisals or retaliation against plaintiffs for participation in this action or because of failure to comply with Exhibit E.

### PLAINTIFFS' AND DEFENDANTS' ALLEGATIONS OF INJURY.

Plaintiffs advance two principal claims of injury which they allege warrant injunctive relief. Plaintiffs argue that compliance with the contested union by-laws and regulations results in their violating federal law. (Cutler affidavit pp. 8–9). Non-compliance, it is claimed, would result in plaintiffs' inability to operate. (Cutler affidavit pp. 8–9).

Also alleged as harm are violations of plaintiffs' rights of contract and damages to reputation through the use of the Form B contract.

Defendants note, however, that Local 802 is abandoning the Form B contract. (Affidavit of Arons, President of the Local, pp. 3, 5).

Defendants also point out injuries which they would sustain if preliminary injunctive relief were granted. An injunction would cause severe hardship by disruption of long-standing procedures and long established relationships before they have been shown to be clearly invalid.

Moreover, a preliminary injunction would disrupt defendants' welfare payments scheme as well as wage schedules.

### PRELIMINARY INJUNCTIVE RELIEF

■ In determining whether preliminary injunctive relief will lie, the court must balance the equities, considering the convenience of the parties and possible injuries to them. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

"[C]onsiderable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant." Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94, 96 (4th Cir. 1950). See also Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2nd Cir.1953).

■ Relief will lie only if the court is convinced with "reasonable certainty" that the complainant will succeed at the final hearing. Hall Signal Co. v. General Ry. Signal Co., 153 F. 907 (2nd Cir. 1907); see Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2nd Cir. 1962).

■ Relief will lie only upon a showing of irreparable harm. Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 35 (2nd Cir. 1962); Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2nd Cir. 1953); Behre v. Anchor Ins. Co. of New York, 297 F. 986, 989 (2nd Cir. 1924).

■ Relief is in the court's discretion. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 35 (2nd Cir. 1962); Behre v. Anchor Ins. Co. of New York, 297 F. 986, 991 (2nd Cir. 1924).

The following special considerations are involved here.

(1) Difficult questions of fact and law are present. See Carroll v. American Federation of Musicians, 295 F.2d 484, 486 (2nd Cir. 1961); Bond v. Harris, 228 F.Supp. 265, 267 (S.D.N.Y.1964); Carroll v. American Federation of Musicians, 60 Civ. 2939, S.D.N.Y., Oct. 19, 1960, (Bryan, J.) (unreported).

(2) Certain of the practices under attack are of long standing. See Carroll v. American Federation of Musicians, 310 F.2d 325, 326 (2nd Cir. 1962); Carroll v. American Federation of Musicians, 295 F.2d 484, 486 (2nd Cir. 1961);

Bond v. Harris, 228 F.Supp. 265, 267 (S.D.N.Y.1964); Carroll v. American Federation of Musicians, 60 Civ. 2939, S.D.N.Y., Oct. 19, 1960, (Bryan, J.) (unreported), pp. 2–3.

(3) Irreparable harm to plaintiffs is absent. See Bond v. Harris, supra, 228 F.Supp. at 267; Carroll v. American Federation of Musicians, 60 Civ. 2939, S.D.N.Y., Oct. 19, 1960 (unreported).

(4) There is a likelihood of irreparable harm to defendants. See Carroll v. American Federation of Musicians, 310 F.2d 325, 326 (2nd Cir. 1962); Carroll v. American Federation of Musicians, 295 F.2d 484, 486 (2nd Cir. 1961); Bond v. Harris, 228 F.Supp. 265, 267 (S.D. N.Y.1964); Carroll v. American Federation of Musicians, 60 Civ. 2939, S.D.N.Y., Oct. 19, 1960 (unreported).

(5) This dispute is in an area involving reconciliation of apparently conflicting federal statutes.

As Judge Friendly wrote in Carroll v. American Federation of Musicians, 310 F.2d 325, 327 (2nd Cir. 1962):

> "In this area, where courts must reconcile the sometimes conflicting policies of four acts of Congress, [Clayton, Norris-LaGuardia, National Labor Relations Act, antitrust laws] two of which explicitly deprive a Federal court of 'jurisdiction' to issue an injunction, * * * there is special need for restraint in granting interlocutory relief."

The present case involves two acts of Congress which specifically deprive the court of jurisdiction to issue an injunction. Facts are alleged which could arguably constitute an unfair labor practice. Under the National Labor Relations Act the NLRB would be vested with primary jurisdiction. See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Also raised are issues which could be considered to involve a "labor dispute" which the court is barred from enjoining by the Norris-LaGuardia Act. (29 U.S.C. § 101 et seq.)

These two Acts preventing injunctive relief must be reconciled with § 302(e) (29 U.S.C. § 186(e)) which grants the court jurisdiction to issue injunctions for violations of § 302.

## I.

## THE WELFARE FUND

Plaintiffs' objections to the validity of the Welfare Fund and my comments on each objection are as follows:

### Objection 1

The Local By-Laws require payment into the fund—not only for sidemen or employee musicians but for orchestra-leader-employers. In other words, the fund is not for the sole and exclusive benefit of the employees of the orchestra-leader-employers.

This violates Section 302(c) (5) of the Act.

### Comment

There seems to be no authority holding that a welfare fund must be limited to the employees of only one group of employers. Therefore, the fund is for employees of orchestra-leader-employers, and orchestra leaders themselves who are the employees of persons who hire them.

Section 302(c) (5) requires the fund be used for the sole and exclusive benefit of the employees of "such employer." No one questions the validity of having employees of different orchestra-leader-employers benefit from the fund. Thus "such employer" may be a plural one.

Ninety-eight percent of orchestra-leader-employers play instruments for other orchestra-leader-employers from time to time. See Cutler v. American Federation of Musicians, 316 F.2d 546, 547–548 (2nd Cir. 1963). The orchestra-leader-employers at times are therefore employees of other orchestra-leader-employers. Consequently, it would appear that it is not unlawful for such orchestra-leader-employers to receive benefits from the fund. They are receiving benefits

in their capacity as employees of "such employers."

Granted a certain small percentage of orchestra-leader-employers never perform for other leaders in an employee capacity, receipt of benefits from the fund by such persons may result in the fund not meeting § 302(c) (5) requirements.

However, the plaintiffs in this suit have not been shown to be orchestra-leader-employers who *never* perform as employees for other orchestra-leader-employers.

■ The whole welfare program should not be disrupted by a preliminary injunction because a very small percentage of its beneficiaries may not be eligible for the benefits of the fund.

■ In addition, plaintiffs suffer slight, if any, irreparable harm. They are responsible for seeing that $1.00 is paid to the fund for themselves and for each person in their band. Perhaps an adequate remedy at law lies through a suit to recover the money. There is no allegation that any criminal prosecutions are pending.

■ Moreover, employment relationships in this area are sui generis. Carroll v. American Federation of Musicians, 310 F.2d 325, 327 (2nd Cir. 1962). On at least one occasion, orchestra-leader-employers have been held to be employees. Carroll v. American Federation of Musicians, 241 F.Supp. 865, 889 (S.D. N.Y.1965). Thus, because of the special nature of the industry it is not likely that the welfare fund will be wholly invalidated.

## Objection 2

■ The payments to the fund out of the wages of the employee are collection of *dues*; no dues may be deducted by employers *without authorization* from member; the orchestra leaders cannot be compelled to collect such *dues*.

## Comment

The statute requires authorization for "membership dues." § 302(c) (4).

These, however, are welfare fund payments. Therefore it is quite likely that such payments are valid under § 302(c) (5).

## Objection 3

The Welfare Fund Plan has no specific or detailed basis of payments *into* and *out* of the fund as required by § 302 (c) (5) (B) of the Act. No detailed basis is specified in any written agreement.

The requirement is indefinite since the bargaining unit and covered employees are not defined and payments may be made by either the orchestra-leader-employer or purchaser of music. It is unclear when the plan commences.

## Comment

It would appear from various documents before the court, see, e. g., Exhibit E attached to the complaint, affidavit of Max Arons and Exhibits 5, 6, and 7, attached thereto, Constitution and By-Laws of Local 802, that the welfare plan is established to cover all union members, including orchestra-leaders who play in steady and single engagements. The plan is financed by payments of one dollar per musician, per engagement, including the orchestra leader. The welfare plan commences with new contracts filed after November 15, 1965 and the orchestra leader or purchaser of music is responsible for seeing that the proper monetary payments are made to the welfare fund. Payments to the fund are made only pursuant to a written agreement signed by the orchestra leader. The fact that contributions to the fund will not be collected absent such a written agreement was stipulated to in open court by counsel for Local 802. (Transcript of Hearing, Jan. 13, 1966, p. 27). Thus, the written agreement and details of the plan may well be sufficient to satisfy the statutory requirements.

■ However, even assuming the statutory requirements are not met, there has been no showing that any indefiniteness alleged is so egregious to the plaintiffs that they are entitled to immediate relief through a preliminary injunction.

■ Plaintiffs in their briefs also argue a lack of a detailed basis of payments *from* the welfare fund to the employees. However, at the hearing plaintiffs' attorney apparently withdrew this point. (See Transcript of Hearing, Jan. 13, 1966, p. 12.) This is a wise course of conduct for even assuming the proposition that a detailed basis for payment *from* the fund is necessary, *but see* Employing Plasterers Ass'n of Chicago v. Journeymen Plasterers Soc'y, 186 F. Supp. 91 (N.D.Ill.1960), such a requirement is met here. See Ramsey v. United Mine Workers Welfare & Retirement Fund, 231 F.Supp. 909 (E.D.Tenn.1964); Lewis v. Gilchrist, 198 F.Supp. 239, 242–243 (N.D.Ala.1961).

### Objection 4

The Welfare Fund as enunciated in Exhibit E has been adopted *unilaterally* by the union as a modification of a 1954 trust agreement. The fund is transformed from a welfare fund for some 2,100 members in the steady engagement field to one for 30,000 members in both steady and single engagement fields.

### Comment

Under Local 802's Constitution and By-Laws, the Executive Board has power to adopt a welfare plan in the club date single engagement field. See Carroll v. Associated Musicians of Greater New York, 206 F.Supp. 462, 469 (S.D.N.Y. 1963), aff'd 316 F.2d 574 (2nd Cir. 1963).

■ To the extent plaintiffs are complaining as employers who have had requirements placed upon them after a refusal to bargain, this court clearly has no jurisdiction. Refusal to bargain is a violation of § 8(b) (3) and therefore solely a problem for the NLRB. In fact refusal to bargain charges against Local 802 have been filed by plaintiff National Association of Orchestra Leaders and are currently pending before the NLRB.

■ To the extent that the plaintiffs are complaining of unilateral action as members of the union, there is argu-

ably an unfair labor practice committed by Local 802.

Section 8(b) (1) and (2) provides that it is an unfair labor practice for a union to exert pressure upon an employer to discriminate against an employee in order to force the employee to participate in union activities. It may be argued that the union exerts pressure upon the orchestra-leader-employers to make sure they assume responsibility for obtaining welfare payments for each employee (and such employees could be orchestra leaders working for another orchestra-leader-employer). Thus, there is arguably a discrimination to compel orchestra-leader-employers to participate in a union activity, see Radio Officers' Union of Commercial Telegraphers Union v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954), and this court is without jurisdiction to grant relief to remedy the situation since primary jurisdiction is vested in the NLRB. San Diego Bldg. Trades Council Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Plaintiffs also claim the alleged unilateral adoption of the welfare fund prevents payments to the fund from coming under the statutory exception of § 302 (c) (5) and therefore the payments are illegal. It is plaintiffs' contention that payments are legal only when made to a welfare fund that was established as a result of collective bargaining. It is conceded by plaintiffs' attorney that this novel argument finds no support in the wording of the statute. (See Transcript of Hearing, Jan. 13, 1966, p. 7.) He nevertheless maintains his position is a correct one based upon an "inference" he finds from reading the statute, (Transcript, supra, p. 8) and based upon one sentence in a case which involved issues not related to those presently before the court. See Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959).

Defendants deny that § 302 requires a welfare plan to be established by collective bargaining. All the requirements of

§ 302, they contend, are fully met by the present contractual arrangements in the music industry. At the most, defendants concede, plaintiffs might have a cause of action before the NLRB for refusal to bargain.

 Plaintiffs' arguments have no clear basis in the law but are novel and speculative. However, a preliminary injunction will lie only upon a showing of a reasonable certainty of ultimate success. See Hall Signal Co. v. General Ry. Signal Co., 153 F. 907 (2nd Cir. 1907). A court especially should refrain from granting preliminary relief when its jurisdiction is called into question and other complex matters of law and fact are in issue. See Carroll v. American Federation of Musicians, 310 F.2d 325, 327 (2nd Cir. 1962); Carroll v. American Federation of Musicians, 295 F.2d 484, 486, (2nd Cir. 1961).

### Objection 5

Employers and employees are not equally represented in the administration of the fund. (§ 302(c) (5) (B).) This is true because no orchestra-leader-employers are on the Board.

The single engagement employers and employees are more numerous than the steady engagement employees and employers (hotels, etc.).

### Comment

There seems to be no requirement that any particular group of employers must be represented upon the Board.

 Plaintiffs also claim that one of the two employer representatives serving as trustees of the fund is in fact an employee and therefore the fund does not comply with § 302. This argument borders on the frivolous.

The trustee, Mr. Tsakas, represents his corporate employer, the Hotel Americana which all apparently agree is an employer of musicians. It is hard to understand how a corporation may act other than through its employees. To claim that a person working for a corporation cannot be a representative of an employer for trust fund purposes appears to be without merit.

In any event, the record is unclear as to whether Mr. Tsakas is in fact a trustee. Exhibit 5 attached to the affidavit of Max Arons lists him as such. However, plaintiffs' complaint names the two employer trustees as defendants and neither of the trustees so named is Mr. Tsakas.

Plainly, plaintiffs have failed to demonstrate sufficient ground for a preliminary injunction.

### Objection 6

The fund requires orchestra leaders to pay on a basis different from that of other union members.

### Comment

 The requirement is not a discrimination between union members but between employers and those not employers. In addition, there may be no discrimination for the leader and each member of his band must pay one dollar to the fund.

### Objection 7

The rules of Exhibit E require payments to be deposited with the Treasurer of Local 802.

### Comment

Section 302(c) (5) exempts monies paid to a welfare fund but it does not specifically require that payments must be made directly to the fund. The only requirements the statute enumerates in order to come within § 302(c) (5) is that the basis of payments be specified and the fund be administered jointly by employers and employees. Holton v. McFarland, 215 F.Supp. 372, 375 (D.Alaska 1963).

It is quite probable, given the nature of the music industry, that the statute does not bar the Union Treasurer from acting as collecting agent for the trust fund. See also United Marine Division, ILA Local 333 v. Essex Transportation Co., 216 F.2d 410 (3rd Cir. 1954); Compare Ware v. Adams, 47 Lab.Cas. ¶ 18,297 (S.D.Cal.1963).

■ In any event, there has been no contention by plaintiffs that there has been a misappropriation or unlawful depletion of funds by the Treasurer. In the absence of this, or any other showing of irreparable harm, there is no necessity for invoking of the extraordinary relief of a preliminary injunction.

### Objection 8

■ Local 802 requires orchestra-leader-employers to pay money to representatives of employees, violating §§ 302 (a) and 302(b) of the Act.

### Comment

This attack has been rejected. See United Marine Division, ILA, Local 333 v. Essex Transportation Co., 216 F.2d 410 (3rd Cir. 1954).

### Objection 9

■ The expansion of the welfare fund to cover single engagements was not properly accomplished by the trustees of the fund.

### Comment

Plaintiffs concede that the trust indenture which originally covered only steady engagements could be amended by the trustees at a special meeting called for that purpose. (Transcript of Hearing, Jan. 13, 1966, pp. 18–19). It is alleged, however, that to their knowledge no such meeting was ever held. On the other hand, attorneys for the defendants state that a meeting was held at which the trust indenture was properly amended. (Transcript, supra, p. 31.)

Even assuming the doubtful proposition that plaintiffs would be entitled to preliminary relief for violation of § 302, if the expanded welfare plan was not properly adopted, no such relief can be granted upon the present incomplete and unsatisfactory factual record.

### Objection 10

The adoption of the welfare fund payment plan in its present form exceeded the authority of the Executive Board. A resolution of Local 802 only authorizes a percentage surtax and not a flat one

dollar payment. (p. 72, Constitution and By-Laws of Local 802.)

### Comment

■ It is far from certain that the payment plan exceeded the authority of the Executive Board. In any event, even if the plan is not in exact accord with the rules and resolutions of the Local, I do not understand how this entitles plaintiffs to a preliminary injunction under § 302.

■ Moreover, plaintiffs have failed to demonstrate any irreparable injury by being required to pay a dollar charge rather than a percentage surtax. This is especially true in light of plaintiffs' concession that no liability has been threatened by the union for failure to comply with the payment scheme. (Transcript, supra, p. 24.)

If plaintiffs are correct in their assertion that their dollar payments are not authorized, they may have a remedy at law to recover such payments. Certainly, there has been no showing to warrant, at this time, an injunction which could disrupt the entire welfare plan.

## II.

### FILING OF CONTRACTS FORM B CONTRACTS

#### Objection

Plaintiffs object to the compulsory use of the Form B contract.

#### Comment

■ Plaintiffs' contention that the use of the Form B contract is a violation of § 302 has been raised previously and this court has refused to enjoin its use. Cutler v. American Federation of Musicians, 62 Civ. 2552, S.D.N.Y., Jan. 2, 1964 (unreported). See also, Carroll v. American Federation of Musicians, 241 F.Supp. 865, 892 (S.D.N.Y.1965). This alone is ground for denial of a preliminary injunction at this time.

■ In addition, the granting of a preliminary injunction would disrupt practices of long standing among musicians and result in great economic loss

which would be irreparable if plaintiffs did not prevail. Substantial questions of law and fact are raised which make it far from clear that plaintiffs will ultimately prevail. Under these circumstances a preliminary injunction should not be granted. Carroll v. American Federation of Musicians, 310 F.2d 325, 326–327 (2nd Cir. 1962). See Bond v. Harris, 228 F.Supp. 265, 268 (S.D.N.Y.1964); Carroll v. American Federation of Musisians, 60 Civ. 2939, S.D.N.Y., Oct. 19, 1960 (unreported).

■ Furthermore, defendant Local 802 asserts that it no longer will seek to enforce the Form B contract. This is another factor strongly militating against provisional relief.

### III.

### HOTEL AND RESTAURANT CONTRACTS

#### Objection

The exact claim of plaintiffs in reference to the hotel and restaurant contracts is not clear. (See paragraphs 16–50.) The gist of the claim appears to be that the "Memorandum of Agreement" dated March 23, 1960 controls the prices and other standards of plaintiffs' employees who work at the hotels under steady engagements, requires the use of Form B contracts, and requires the hotels to pay money into the welfare fund, and that no negotiations between the union or the hotels and the plaintiffs as employers took place.

#### Comment

The Memorandum of Agreement dated March 23, 1960, is attached to the complaint as Exhibit A. This agreement may be summarized as follows:

1. Musicians hired for performances at a hotel must be members of the union (par. 1A).

2. The hotel must notify a lessee employing professional musicians that the rules of the AFM require union members for single engagements (par. 1B).

3. Each hotel, etc. must contribute as specified to the Local 802 Steady Engagement Welfare Fund (par. 3). Pay scales (apparently for employment of musicians by the hotel or lessee) are set up (pars. 4, 5 and 6).

The agreement does not appear to relate to employment in single engagement except insofar as Section 1B requires the hotel to advise lessees as to union rules in respect to employment of only union members.

■ To the extent that plaintiffs complain of the contracts because no negotiations have taken place and union members only must be hired, jurisdiction would appear to be vested exclusively with the NLRB. Section 8(b) (1) (coerce an employee in the exercise of his rights), Section 8(b) (2) (causing an employer to discriminate against an employee), Section 8(b) (3) (refusal to bargain).

This court has no jurisdiction to consider any alleged violation involved in Section 1B of this agreement. Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2nd Cir. 1962); San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 244, 248, 79 S.Ct. 773, 3 L.E.2d 775 (1959); decision of National Labor Relations Board, Joe Carroll Complaint v. Associated Musicians of Greater New York Local 802, dated October 18, 1965.

Moreover, in Bond v. Harris, 228 F. Supp. 265 (S.D.N.Y.1964), Judge Bonsal of this court declined to enjoin the Hotelmen's Committee for Hotel Users of Music, etc. from subjecting the plaintiffs in that action to the same contracts. The same reasons set forth by Judge Bonsal militate against any preliminary injunction here.

### IV.

### REPRISALS

#### Objections

■ Plaintiffs now seek an injunction against future reprisals of Local 802 assertedly because of fear that the Local

may institute charges and remove plaintiffs as members.

### Comment

The Labor Management Relations Act is designed to prescribe the legitimate rights of employees and to protect the rights of individual employees in their relations with labor organizations in addition to certain other purposes stated in the statute (Title 29 U.S.C. §§ 141, 151). Title 29 U.S.C. § 411(a) (4) provides that "No labor organization shall limit the right of any member thereof to institute an action in any court * * *." Likewise the member's freedom of speech is protected. (§ 411(a) (2)). See Farowitz v. Associated Musicians of Greater New York, Local 802, 241 F.Supp. 895 (S.D.N.Y.1965); see also, Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963), cert. denied, 375 U.S. 945, 84 S.Ct. 344, 11 L.Ed.2d 275.

What plaintiffs now ask of this court is in effect an injunction prohibiting Local 802 from violating these statutory provisions which protect plaintiffs in the invocation of their statutory rights. Plaintiffs have failed to show that Local 802 is about to institute illegal reprisals against them. If subsequent events warrant, plaintiffs may invoke at that time whatever remedies the law provides.

### JURISDICTIONAL CONSIDERATIONS UNDER § 301

Plaintiffs also claim the facts pleaded state a cause of action under § 301 based on an alleged breach of contract between union members and the union. It is doubtful whether the alleged breach of contract falls within the purview of § 301 which has so far been restricted to contract breaches between employers and unions. See Allen v. Armored Car Chauffeurs etc. Local Union, 185 F.Supp. 492 (D.N.J.1960). However, I have not fully reviewed the law and do not pass one way or another upon the question as to whether a claim for relief is stated under § 301.

Similarly, I do not pass upon the question of pendant jurisdiction.

### CONCLUSION

To conclude it clearly appears from the above considerations:

1. There is a lack of reasonable certainty that plaintiffs will ultimately succeed in this action.

2. There is no showing of irreparable injury to plaintiffs.

3. To grant the injunction would entail substantial harm to defendant Local and its members.

4. The determination of the issues herein involves complex questions of law and fact.

5. There are substantial questions raised involving the court's jurisdiction to grant relief.

6. Certain of the issues concerned here have heretofore been determined against plaintiffs.

### COSTS

The defendants seek imposition of costs on plaintiffs because of this motion on the ground that it constitutes harassment, repetitive attacks on the union for relief heretofore denied, etc. There may be some truth in this contention. A history of the major litigation by these parties shows that many of such plaintiffs have brought numerous other actions and have been parties to preceding applications for preliminary injunctions, most of which were denied.

However, at this point, this being a motion for a preliminary injunction rather than for final relief, it is impractical to adequately appraise the question of costs. Accordingly, the motion for costs is denied at this time without prejudice, however, to defendants' subsequent application therefor in respect to this motion after the ultimate disposition of the complaint in this court.

For the reasons above set forth, the motion for preliminary injunction is denied.

This constitutes my Findings of Fact and Conclusions of Law. Rule 52(a), Fed.Rules Civ.Pro.

Settle order on notice.