Max Arons et al., Plaintiffs, *v.* Madaki, Inc., Defendant.

Civil Court of the City of New York, New York County, October 4, 1966.

*Ashe & Rifkin* for plaintiffs. *Fein & Silberbush* for defendant.

Arnold L. Fein, J. Plaintiffs move for summary judgment, in an action to recover payments agreed to be made to the welfare fund in four agreements made by defendant with four different musical trio leaders. Three of the agreements provide for engagements of two weeks each, with two-week extensions on notice by the employer. The other is for an indefinite engagement, subject to two weeks' notice of termination. Each describes defendant as the employer and attempts to designate the leader as the agent for the other two members of the trio. Except for the leaders, none of the members of the trios executed the agreements. Nor are they named therein.

Each agreement requires defendant to pay $374.50 per week, described as "Wage Agreed Upon", without showing what portion is to be received by the leader and each member of the trio. Two agreements provide: "The employer agrees to pay

3% of scale or $3 per man (whichever is less) per week to Local 802 Welfare Fund ''. One reads: '' Employer agrees to pay 3% to Local 802 Steady Engagement Welfare Fund ''. The other states: '' Employer agrees to pay $3 or 3% of scale plus employer's share of New York State disability, payable by separate check drawn to Local 802 Steady Engagement Welfare Fund''.

Defendant does not deny execution of the agreements or failure to pay the stipulated amounts to the union's welfare fund, however denominated. Although noting the differences in the designation of the fund, defendant does not appear to be challenging plaintiffs' right to recover on that ground. The court holds that only one fund was intended, the fund of which plaintiffs are trustees.

The pleadings are short form. Defendant's answer is a general denial. In opposition to the motion defendant argues the contract form was a mere fiction and never intended to represent the true agreement between defendant and the leaders. It asserts that Local 802 of the Musicians' Union insisted that this type of contract, known as a Form B contract, be entered into with the leaders of these musical trios and that failure or refusal to do so would have resulted in a picket line. Although not pleaded, defendant appears to be relying on a defense of illegality. It relies on *Cutler* v. *American Federation of Musicians* (316 F. 2d 546, 548–549) where the court stated: '' We find the designation in the Form B Contract to be a self-serving subterfuge which is not entitled to any weight.''

Defendant contends the members of the trio were not its employees; that defendant was merely the purchaser of music from the leader; that the leader had complete control of the trio, hired the side musicians, paid them what he saw fit from the moneys received by him from defendant; that the leader had the sole right to discharge them, was the sole judge of their ability, and provided for workmen's compensation, withholding taxes, etc., asserting all this is shown by the moving papers. In essence, its defense is that any payments required to be made to the union's welfare fund are required to be made by the true employer of the musicians, the leader of the trio, and not by the owner or operator of the establishment which entered into the contract. No such provision is either found, or even suggested, in the agreements.

Defendant further asserts that these engagements were not steady engagements but rather single engagements and, accordingly, fall within the ambit of the *Cutler* decision. That action was brought by Cutler and other band leaders, engaged in the

single-engagement field, to enjoin the union from collecting from such band leaders a 1½% tax and 10% traveling surcharge prescribed by the local's by-laws and the federation's constitution. The 1½% and the 10% were not deducted from the wages of the side men or the leader but were intended to be charged to the purchasers of the musical performance. However, the band leader was obligated to pay such charges to the union, irrespective of whether collected from the purchaser of the music.

The court held that a band leader engaged in the so-called single-engagement field, namely, performances at weddings, dances, bar mitzvahs, sporting events — always for less than one week and usually for only one day, is in fact the employer of the members of his band or orchestra and that under section 302 of the Labor Management Relations Act as amended (U. S. Code, tit. 29, § 186), the union was prohibited from demanding such payments from Cutler or others similarly situated. This was the issue tendered and decided, not whether the purchaser of the music under a contract obligating him to make such payments could escape liability under his contract. The difference was noted in a case in which band leaders sought injunctive relief similar to that sought in the *Cutler* case, against defendants representing the employers or operators, the so-called purchasers of the music. (*Bond* v. *Harris*, 228 F. Supp. 265, 267.) Moreover, as found in *Cutler*, the 10% surcharge amounted to an exaction from the leaders' share, and the moneys were not payable to the union's welfare fund. (*Ames* v. *Associated Musicians of Greater N. Y.*, 251 F. Supp. 80.)

The facts here are to the contrary. The agreements provide the money is to be paid to the union's welfare fund by defendant, described therein as the employer. No provision is made for such payment by the leader. Section 302 of the Labor Management Relations Act, as amended (U. S. Code, tit. 29, § 186, subd. [c]), states its provisions " shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer * * * or of such employees * * * jointly with the employees of other employers making similar payments ".

Accordingly, the *Cutler* decision is neither pertinent nor controlling. Neither it nor the act prohibits the payments sought here. (See *Rothstein* v. *Manuti*, 235 F. Supp. 39, refusing to extend the *Cutler* doctrine to the steady engagement field.) It is immaterial whether the engagement here be regarded as a single or a steady engagement, or whether the leaders hired the

musicians and had complete control of the trio, paying each member what the leaders saw fit and having the sole right to discharge them, as the sole judge of their ability, or whether the leaders obligated themselves to provide workmen's compensation, take care of withholding tax obligations, etc. No provision of law has been found which prohibits these payments.

It is therefore unnecessary to inquire whether the leader was an independent contractor employing the musicians and selling the music or whether the operator defendant was the employer. In effect, the contract was one to pay the lump sum "Wage Agreed Upon" plus 3% thereof (or $3 per man) by way of compensation, the 3% to be payable to the union welfare fund.

In this context, the interpretation of a contract, little guide is provided by cases involving obligations imposed by law upon an employer, i.e., obligations respecting unemployment insurance, workmen's compensation, social security, withholding taxes, etc., holding that the mere designation in the contract does not control, and that since the applicable statutes impose liability upon the employer, the court must determine the fact as to who is the employer on the basis of common-law standards. (*Matter of Savoy Ballroom Corp. [Lubin]*, 286 App. Div. 684; *Matter of Hotels Statler Co.*, 279 App. Div. 814; *Matter of Roseland Amusement Co.*, 295 N. Y. 913; *Matter of Basin St. [Lubin]*, 6 N Y 2d 276.)

Here, there are explicit contracts, wherein defendant assumed obligations to pay agreed upon sums. It is immaterial what designation the parties were given in the contracts and it is equally immaterial whether, by standards applicable to the interpretation of stautes, one might come to a different result as to who is the employer. Defendant having obligated itself to make the payments, it is required to do so, absent a showing, not here made, that such payments would violate the law or were not agreed upon.

Plaintiffs' motion for summary judgment is granted and the answer of the defendant is hereby stricken.