Peter ZEANER et al.

v.

HIGHWAY TRUCK DRIVERS & HELPERS LOCAL 107

and

Branch Motor Express Co.

and

Rodgers Motor Lines, Inc.,

and

Motor Transport Labor Relations, Inc.

Civ. A. No. 35831.

United States District Court
E. D. Pennsylvania.

Oct. 2, 1964.

Robert F. Simone, Philadelphia, Pa., for plaintiffs.

Richard H. Markowitz, Philadelphia, Pa., for Highway Truck Drivers & Helpers Union Local 107.

James J. Leyden and Irving R. Segal, Philadelphia, Pa., for Motor Transport Labor Relations, Inc.

Irving R. Segal, Philadelphia, Pa., for Branch Motor Exp. Co.

BODY, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction. The Court makes the following findings of fact:

1. Plaintiffs are all former employees of Rodgers Motor Lines, Inc. at 4450 Rising Sun Avenue, Philadelphia, Pennsylvania, where they were employed as truck drivers. Plaintiffs bring this suit both as individuals and as all the members of a class since they are all of the truck drivers formerly employed by Rodgers Motor Lines, Inc. in Philadelphia.

2. Defendant, Branch Motor Express Company (hereinafter referred to as "Branch"), is a corporation which has its place of business at Union Avenue and Suckles Boulevard, Pennsauken, New Jersey. It was incorporated in Pennsylvania, and was served c/o C. T. Corp. System, Fidelity-Philadelphia Trust Building, Broad and Sansom Streets, Philadelphia, Pennsylvania.

3. Defendant, Rodgers Motor Lines, Inc., (hereinafter referred to as "Rodgers"), is a corporation which formerly had a place of business at 4450 Rising Sun Avenue, Philadelphia, Pennsylvania. It is a Deleware corporation registered to do business in Pennsylvania at Gilligan Street and South Avenue, Scranton, Pennsylvania.

4. Defendant, Highway Truck Drivers and Helpers, Local 107, (herein-

after referred to as "Union"), is an unincorporated association affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and maintains its place of business at 105 Spring Garden Street, Philadelphia, Pennsylvania. All the plaintiffs and all the members of the class represented by plaintiffs, were members of Local 107 which acted as their exclusive bargaining agent at all times material hereto.

5. Defendant, Motor Transport Labor Relations, Inc., (hereinafter referred to as "MTLR"), is a corporation which has its place of business at 421 New Market Street, Philadelphia, Pennsylvania, which represents over two hundred (200) employers of truck drivers in the Philadelphia area.

6. All defendants were parties to a certain agreement which is known as the "Motor Transport Labor Relations, Inc. and Teamsters' Locals City Cartage Agreement". This agreement covers all truck drivers, including plaintiffs and the members of the class which they represent, of the signatory companies which are generally engaged in the motor freight business in the Philadelphia area. The said agreement is in effect at all times material hereto, and remains in effect until December 31, 1965. The agreement is printed in booklet form, and generally describes the terms and conditions of employment.

7. Sometime prior to June 29, 1963 defendants Branch and Rodgers negotiated for and entered into a written agreement for a merger, sale or consolidation whereby Rodgers would be absorbed into Branch. The said merger, sale or consolidation was approved by the Interstate Commerce Commission on or about June 29, 1963.

8. Sometime in December 1963, plaintiffs and the class they represent were informed that Rodgers had been absorbed into Branch and that its operations would be conducted at Union Avenue and Suckles Boulevard, Pennsauken, New Jersey.

9. On or about January 1, 1964 said plaintiffs became employees of Branch as truck drivers at Union Avenue and Suckles Boulevard, Pennsauken, New Jersey. The seniority lists of the Rodgers and Branch employees were dovetailed as the result of an agreement between a representative of defendant Union and Branch.

10. On or about January 27, 1964 a grievance was filed on behalf of the original Branch employees before the Change of Operations Committee of the Joint Area Committee, described in Article 7 of the Collective Bargaining Agreement aforesaid, protesting the dovetailing of the Rodgers and Branch seniority lists.

11. On January 30, 1964 a hearing was held before said Change of Operations Committee pursuant to the aforesaid grievance. At said hearing the Branch employees were represented by John Middleton, steward; Joseph Walsh, driver; John Smyth, platform man; Harry Shaw, driver; and William Yoast, driver. The Rodgers employees were represented by Henry Kazmurski and the former steward of Rodgers' employees, Peter Zeaner.

12. In submitting the aforesaid grievance to the Change of Operations Committee of the Joint Area Committee, all defendants were bound by the terms of the Collective Bargaining Agreement and were required to arrive at a fair and impartial decision. In addition, the Union, as the exclusive bargaining agent, had a duty to represent plaintiffs fairly, honestly and to the best of its ability, without misrepresentation, fraud or deceit.

13. The decision of the Change of Operations Committee of the Joint Area Committee, determined on January 30, 1964, was that the former employees of Rodgers, plaintiffs herein, should be placed at the bottom of the Branch seniority list.

### DISCUSSION

Initially defendants have contended that this Court does not have

jurisdiction of the matter under the provisions of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), which provides that suits for violation of contracts between employers and labor organizations representing employees in an industry affecting commerce may be brought in a District Court of the United States having jurisdiction of the parties without respect to the amount in controversy or citizenship of the parties. Plaintiffs' complaint alleges that each employer, the Union, and the Joint Area Committee have breached their duty of fair representation in reaching the decision not to dovetail the Branch employees. Viewing these allegations in the light of the principles enunciated in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, plaintiffs have stated a cause of action that arises under Section 301(a) of the Labor Management Relations Act.

Plaintiffs contend that failure of the Joint Area Committee to require the continuation of the dovetailed seniority lists was a breach of their duty to arrive at a fair, impartial decision and was a violation of the Collective Bargaining Agreement. They allege that Rodgers and Branch breached the Collective Bargaining Agreement by refusing to insist on its provisions with respect to mergers, purchases, acquisitions and sales which require that seniority lists of the employees of both companies be dovetailed.

Plaintiffs' complaint further alleges that the Union breached its duty:

"(a) By refusing to insist that the seniority lists be dovetailed as the collective bargaining agreement requires;

"(b) By failing to recognize the written agreement between Rodgers and Branch as an agreement of merger, sale or acquisition;

"(c) By failing to take an actual and vigorous position in support of plaintiffs herein;

"(d) By failing to resolve the dispute at the union level where the collective bargaining agreement could admit of but one just proper answer;

"(e) By undertaking to represent employees of both Rodgers and Branch, where a conflict of interests was involved;

"(f) By submitting the seniority dispute to the Joint Area Committee where it was impossible to reach a fair decision;

"(g) By failing to require that all the facts be presented before the Change of Operations Committee on January 30, 1964;

"(h) By failing to insist that the discussion with respect to the financial condition of Rodgers and the past practices on [sic] this area were irrelevant to the Change of Operation [sic] Comittee's [sic] determination in light of the Central States Rules which were adopted in the collective bargaining agreement."

As stated previously, all parties involved herein are subject to the Motor Transport Labor Relations, Inc. and Teamsters' Locals City Cartage Agreement which provides:

"Article 5.

"Section 1.—Seniority rights for employees shall prevail. Seniority shall be broken only by discharge, voluntary quit, or more than a two (2) year layoff. Any employee on the seniority list who is absent because of illness or injury shall accumulate seniority for the purpose of determining his place on the seniority list. * * * A list of employees arranged in the order of their seniority shall be posted in conspicuous place at their place of employment and a copy to the Union. There may be (at the Union's discretion) one road driver steward and one city driver steward and, in addition, one dock steward per shift in each terminal or operation. Such stew-

ards shall be granted super-seniority for all purposes, including layoff, rehire, bidding and job preference. Any controversy over the seniority standing of any employee on the seniority list shall be submitted to the Joint Grievance Procedure. (Article 7). \* \* \*

"Section 4.—(a) The uniform rules as to application of seniority in the case of mergers, purchases, acquisitions and sales, etc. shall be those adopted by the Central States Joint Area Committee. \* \* \*

"Article 7.

"Section 4.—(a) The Employers and the Unions shall together create a permanent Joint Area Committee which shall consist of an equal number of representatives appointed by the Employers, namely one from each of the geographical locations of Philadelphia, Norristown, and Chester, Pennsylvania, Camden and Atlantic City, New Jersey, and an equal number of representatives appointed by the Unions, or a panel thereof. This Joint Area Committee shall meet at established times and at a mutually convenient location. The Joint Area Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings. (b) *Where the Joint Area Committee by majority vote settles a dispute, such decision shall be final and binding on both parties with no further appeal.* \* \* \*" (Emphasis supplied.)

The seniority rules adopted by the Central States Joint Area Committee, in relevant part, provide:

"APPLICATION OF SENIORITY RULES IN CASE OF MERGERS, ACQUISITIONS, SALES, ETC. UNDER CENTRAL STATES ROAD AND CARTAGE AGREEMENTS

"*Merger, purchases, acquisition, sale, etc.*

"1. If both carriers involved are solvent then the seniority lists of the two companies should be dovetailed so as to create a Master Seniority List based upon total years of service with either Company. This is known as dovetailing in accordance with years of seniority. \* \* \*

"8. *The parties acknowledge that specific situations may arise which may not be covered by the above rules, or in which the parties may feel that different treatment of the problem is necessary. In such situation, as provided in Article 5, Section 1, the Employer, the Union involved, and the Central States Drivers Council may mutually agree to such disposition of the seniority problems, as in their judgment is appropriate under the circumstances. The Change of Operations Committee shall have the authority to add to or to modify these rules in specific situations presented to it.*" (Emphasis supplied.)

Plaintiffs have asked the Court to set aside the decision of the Joint Area Committee contending that they have suffered irreparable damage in not having received the amount of work that their seniority would provide. There has been a showing that some of them have been financially harmed by the decision of the Committee. However, even though irreparable injury may result, a court should balance the conveniences of all parties before the granting or withholding of the injunction. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc., 3 Cir., 268 F.2d 569.

A review of the aforestated sections of the contractual agreement exemplify the provisions by which all parties are bound. As stated in General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Company, Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918:

"\* \* \* Thus, if the award at bar is the parties' chosen instrument for

the definitive settlement of grievances under the Agreement, it is enforceable under § 301. * * * "

It is to be noted that the Union originally took the position that the Rodgers employees should be dovetailed, and at the hearing before the Joint Area Committee the Union merely read the contract and said it would abide by the decision of the six man board without taking any side in the dispute. The Union's position in this instance is justifiable since it was involved in the dual capacity of representing all employees concerned herein.

The Court cannot nullify the decision of the Joint Area Committee unless it is presented with substantial evidence of fraud or dishonest conduct either by the Union, the employers, or the Committee. If there is shown evidence of the lack of good faith and honesty by the defendants in the exercising of their duty of fair representation, the Court would have the power to set aside the decision of the Joint Area Committee. Humphrey v. Moore, supra. This Court can find no substantial evidence either from the record or from the hearing that the Union has breached its duty of fair representation, or that any of the defendants are guilty of fraud or dishonest conduct.

It is both unfortunate and regrettable that a situation such as this should arise in the labor field and result in an adverse decision to a group of workers thereby affecting their working rights and privileges. However, in view of the fact that there has been no clear showing of fraud or deceit to this Court at this hearing, it would be improper to grant the injunction requested.

### ORDER

And now, this second day of October, 1964, in accordance with the foregoing Opinion, it is ordered that Plaintiffs' Motion for Preliminary Injunction be and the same is hereby denied.