A. J. PARKER, Myles Williams, T. M. Anderson and Joseph McLaughlin, Plaintiffs,

v.

MERCURY FREIGHT LINES, INC., International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 612, L. T. Nelson, B. W. Coker, W. L. Plunkett, E. O. Cooper and E. J. Henry, Defendants.

Civ. A. No. 69–366.

United States District Court
N. D. Alabama, S. D.

Dec. 23, 1969.

---

7. These instructions are found at Trial Tr. 413, 418, 426.

Max Pope, Levine, Fulford & Pope, Birmingham, Ala., for plaintiffs.

William F. Gardner, N. Lee Cooper, Cabiness, Johnston, Gardner & Clark, Birmingham, Ala., for defendant Mercury Freight Lines, Inc.

T. Eric Embry, Beddow, Embry & Beddow, Birmingham, Ala., for the other defendants.

## OPINION OF THE COURT

ALLGOOD, District Judge.

The above-styled cause having regularly come on for final hearing and having been finally tried by the court without a jury on September 15, 1969, on plaintiffs' complaint and amendment thereto and the defendants' answers thereto; and the court having considered all the legally admissible evidence, the

pleadings and written briefs of counsel and being otherwise fully advised, hereby enters the following opinion.

Plaintiffs, herein, are employees of the defendant, Mercury Freight Lines, Inc. (hereinafter referred to as Mercury) and also members of the defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 612 (hereinafter referred to as Union). The defendant Mercury is an Alabama corporation and the defendant Union is a labor organization as defined in Title 29, U.S.C.A., Section 152(5). The defendants, L. T. Nelson, B. W. Coker, W. L. Plunkett, E. O. Cooper and E. J. Henry (hereinafter referred to as defendants) are employees of Mercury and are also members of the Union.

The five defendants were hired by Mercury in 1955 and 1956 at a time that the Company had obtained temporary authority from the Interstate Commerce Commission (hereinafter referred to as the I.C.C.) to operate to Texas. This temporary authority was cancelled by the I.C.C. in 1956 and the defendants were thereafter terminated or laid off.

Subsequent to the time that the defendants had been hired and then laid off, the plaintiffs were hired by Mercury at various dates in 1958 and 1959. Plaintiff Parker was originally hired in 1956 and his service with Mercury was interrupted in the same manner as defendants. He was rehired, however, on March 16, 1959.

In 1961, Mercury acquired permanent authority from the I.C.C. to operate to Texas. This resulted in the defendants being rehired. They returned to work in January and February of 1961 and were given seniority as of those dates. Defendants, however, contended that they should be given seniority in accordance with their original dates of employment in 1955 and 1956.

This question was submitted in 1961 to the Southeastern Multi-State Grievance Committee (hereinafter referred to as Committee) which is the arbitration board provided for by the collective bargaining agreements in the trucking industry in general. A decision was rendered by the Committee on April 6, 1961, which provided that defendants would be given their original dates of hire for purposes of vacation and fringe benefits but that their seniority for job bidding purposes would date from the time that they were rehired which would place them behind plaintiffs.

On every seniority roster after April 6, 1961, and until the seniority roster posted on November 26, 1967, the plaintiffs remained numerically ahead of the defendants. On each of the seniority rosters the original date of hire and the date defendants returned to work for Mercury were listed.

Prior to 1967, Mercury operated under the terminal seniority system where a driver held seniority only at one terminal and not elsewhere in the Mercury operations. In 1967, the members of the Union amended their collective bargaining agreement by adding modified seniority. This permitted an employee of Mercury in the event he was laid off or quit work at one Mercury terminal to go to work at another Mercury terminal using the same seniority date he had at the terminal where he was previously employed.

After modified seniority was added to the contract, a new seniority roster was posted. This seniority roster was dated November 26, 1967. On this seniority roster the defendants, who have only worked for Mercury at the Birmingham terminal, were listed numerically ahead of plaintiffs and only one date was given as their seniority date. This date was the original date defendants went to work for Mercury.

Defendants were allegedly placed ahead of plaintiffs in November, 1967, because one of the provisions in the modified seniority system required Mercury to prepare a new seniority roster listing all of the drivers on the basis of "full continuous road seniority," and Mercury interpreted the "full continuous road seniority" of defendants to

be the dates they were hired in 1955 and 1956. Mercury, however, did not interpret plaintiff Parker's seniority in a like manner even though his original date of hire was 1956.

After the posting of the November 26, 1967 roster, plaintiffs promptly filed a grievance protesting their listing on the seniority roster. This grievance was heard by the Committee on February 5, 1968. All the defendants with the exception of E. J. Henry were present at the hearing. The Committee's decision at that time was that the seniority standings should remain as the standings had been under the 1961 decision, that is, that the plaintiffs would go back ahead of the defendants on the seniority roster.

In compliance with that decision, a seniority roster was posted on February 16, 1968, listing plaintiffs numerically ahead of the defendants. Two dates were shown for the defendants under the caption of "Seniority Date" and "Vacation Seniority Date."

On April 5, 1968, a seniority roster was posted. Plaintiffs were listed on this roster ahead of defendants and the dates shown by each defendant was the same as shown on the February 16, 1968 roster.

On May 1, 1968, the defendants filed a grievance protesting the position of plaintiffs on the seniority roster. The Committee held a hearing on this grievance in Atlanta, Georgia, on June 25, 1968.

A notice of the hearing was posted on the bulletin board of Mercury on June 24, 1968, notifying the employees of Mercury that the pending grievance would be heard on June 25, 1968. Only one of the plaintiffs, Joseph McLaughlin, saw the notice as posted. One of the plaintiffs was on vacation and one was out of town making a haul for Mercury. Plaintiff McLaughlin called Sam Webb, the president and business agent of the Union, about the hearing. Sam Webb told McLaughlin that he was sure Mercury would take the position that the

matter had been decided on February 5, 1968.

Usually, pending grievances are heard in the first week of each month, but due to the holiday of July 4, 1968, falling in the first week of July, the usual first week of July hearing time was advanced to the last week of June. As a result of the change of date, the one day notice and the statement made by Sam Webb to the only plaintiff who saw the notice, none of the plaintiffs were present at the June 25, 1968 hearing.

This hearing resulted in an award which gave defendants seniority ahead of plaintiffs. A seniority roster was posted on July 5, 1968, in accordance with the June 25, 1968 award.

Plaintiffs filed a grievance protesting the July 5, 1968 seniority roster. The Committee heard this grievance on August 6, 1968. It was contended by the Union that this hearing was a rehearing of the June 25, 1968 hearing. After the August 6, 1968 hearing, an award was made which stated that the seniority would remain as posted on July 5, 1968.

Under the seniority roster in effect at Mercury presently, if either of the defendants and either of the plaintiffs seek the same job, it will be awarded to the defendant seeking it. Prior to the June 25, 1968 award, the opposite would have been true.

■ Plaintiffs have exhausted all the procedures and remedies in the collective bargaining agreement. This court has jurisdiction over the parties and of the subject matter under 29 U.S.C.A. § 185, and the court's decision is controlled by federal law. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The question presented for this court's determination is which of the Committee's decisions (April 6, 1961; February 5, 1968; June 25, 1968; August 6, 1968) regarding the seniority rights of plaintiffs and defendants is to be enforced.

■ As the defendants point out, it is a well-established rule that courts recog-

nize an arbitral board's decision as final and binding and review the merits of a board's decision only if it can be shown that there is evidence of fraud or dishonest conduct in the processes that led to the board's decision. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Zeaner v. Highway Truck Drivers and Helpers Local 107, 234 F.Supp. 901 (E.D.Pa.1964); Teamsters Local Unions v. Braswell Motor Freight Lines, 392 F.2d 1 (5th Cir. 1968), modified on another ground, 395 F.2d 655 (5th Cir. 1968). In the instant case there probably is not sufficient evidence of fraud or dishonest conduct on the part of Mercury, the Union, or the Committee to warrant the court's reviewing the merits of the several Committee decisions.

However, in this case the court is not being asked to review the merits of the Committee's decisions. Rather, it is being asked to determine which of the four Committee decisions is final and binding. It is the court's function to make this determination. To the extent that defendant's arguments ignore the fact that this determination can be made without an examination of the merits of the various decisions, their arguments are not relevant to the court's disposition of this case.

In light of the principles which the courts have dictated are to govern the judiciary's relationship with arbitral boards and the evidence presented in this case, this court holds that the February 5, 1968 Committee decision is final and binding.

In Citizens Bldg. of West Palm Beach v. Western Union Tel. Co., 120 F.2d 982 (5th Cir. 1941), an arbitral board was asked to decide the fair rental value of a certain piece of property. The board met and rendered a decision. After the decision was rendered the landlord petitioned the board to set aside the first decision and hold a second hearing on the basis that there had been inadequate notice of the board's first meeting.

Even though it does not appear that the tenant received any more notice than the landlord, the tenant objected to a reconsideration of the matter probably because the original decision was more favorable to his contention than to the landlord's contention. Over the tenant's objection the board held a second hearing with adequate notice and it then rendered a decision which was different from the first.

The landlord claimed the second decision was final and binding. The tenant claimed the first decision was final and binding. The Fifth Circuit Court of Appeals was asked to decide which of the decisions was to be enforced.

The Fifth Circuit held that the board's first decision was void for lack of reasonable notice but it also held that the second decision was no more valid than the first, on the basis that:

"When an arbitral board renders a final award, its powers and duties under the submission are terminated. Its authority is not a continuing one, and, after its final decision is announced, it is powerless to modify or revoke it or to make a new award *upon the same issues*. The first award disposed of all questions before the arbiters, and was final; the publication of that decision exhausted the powers of those appointed even though the action taken was void, and the second award is no more valid than the first." Citizens Bldg. v. Western Union Tel. Co., *supra*, at 984 (emphasis added).

Therefore, the court of appeals remanded the case to the district court to order a new arbitration in accordance with the existing contract between the tenant and landlord.

The facts in Citizens Bldg. v. Western Union Tel. Co., *supra*, can certainly be distinguished from those in the instant case, but it is this court's opinion that the general principles enunciated therein are applicable to the question now before the court.

In the instant case we have four Committee decisions. The first decision which gave plaintiffs seniority for job bidding purposes and defendants seniority for vacation and fringe benefits was handed down April 6, 1961. After this decision was made, it was final and binding and there was nothing the Committee could do to modify or revoke it on the same issues.

However, in November of 1967 Mercury switched from terminal seniority to modified seniority and shortly thereafter Mercury issued a seniority roster putting defendants ahead of plaintiffs for all purposes. After this occurrence plaintiffs petitioned the Committee to rule on Mercury's adjustment of the seniority roster. It was appropriate for the Committee to rule on the petition for the Committee was presented with a new issue, modified seniority.

If the Committee had decided at this time that defendants should have been given seniority for all purposes, then no matter whether this court agreed or disagreed with the Committee's decision the decision would have been final and binding unless the court had been shown that there was fraud or dishonest conduct in the arbitration process. In like manner, the Committee's decision that plaintiffs would have seniority for job bidding purposes and defendants would have seniority for vacation and fringe benefits must be considered final and binding.

Defendants contend that the February 5, 1968 Committee decision was final and binding until June 25, 1968, at which time the Committee revoked the February 5, 1968 award. However, no new issues were presented for the Committee's consideration in June of 1968. Therefore, the Committee was without authority to revoke or modify its February decision and the award made at that time is void. If this court were persuaded that the Committee had had the authority in June, 1968, to reverse its award of February, 1968, the court would still hold that the decision reached in June was void since in the court's opinion there was a lack of reasonable notice of the hearing.

Neither were any new issues presented for the Committee's consideration in August of 1968. The August hearing was nothing more than an inadequate attempt to correct the insufficient notice of the June, 1968 hearing and the award made at that time is also void.

Defendants contend that because plaintiffs invoked the aid of the Committee in August, 1968 (after the lack of reasonable notice of the June, 1968 hearing) that they are now estopped from contesting the validity of the award made by the Committee at that time. The court is not so persuaded.

Plaintiffs had no choice other than filing a protest with the Committee or possibly be saddled with the defense of not exhausting the grievance procedures as provided for in the arbitration agreement. This had to be done even though the seniority roster posted after the June 25, 1968 hearing was based on a void decision.

The February 5, 1968 award must be considered final and binding. If an arbitral board could meet one month and decide a labor controversy one way and then meet again three months later, reconsider the identical controversy and decide it another way, the prevention of industrial strife which is the purpose of the arbitration agreement is averted. See Mercury Oil Refining Co. v. Oil Workers Int. Union, CIO, 187 F.2d 980, 982 (10th Cir. 1951). Under the theory of the defendants, the seniority rights of the parties involved here would never be settled. For as long as the Committee is in existence, under defendants' theory, it would have the power to change a decision no matter how long the decision had been in effect.

Further rationale for the court's holding that the February 5, 1968 award is final and binding is found in Loyal Band or Group of Creek Indians v. United States, 97 F.Supp. 426, 118 Ct.Cl. 373 (1951), cert. den. 342 U.S. 813, 72 S.Ct.

27, 96 L.Ed. 615 (1951), where the Court of Claims held that once an arbitral board makes an award, "the rights of the parties to that award are vested and cannot be destroyed by a later attempted modification" of the award. *Id.* at 431. In the instant case the rights of the plaintiffs to seniority over defendants were determined in April of 1961 and again in February of 1968. These rights have been recognized by the Supreme Court as being of great value and importance. These rights determine whether plaintiffs get or keep an available job. See Humphrey v. Moore, supra, 375 U.S. at 346–347, 84 S.Ct. 363. Plaintiffs have acted in reliance on the seniority rights awarded them. It would be unfair to plaintiffs to permit a periodic reconsideration of these rights.

Another basis for this court's holding that the February 5, 1968 decision is final and binding is stated very clearly and plainly in La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569 (3rd Cir. 1967). There the court said:

"The policy * * * is an unwillingness to permit one * * * to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion. * * * This policy of finality, founded on practical considerations, is nourished by the primitive view of the solemnity of all judgments. * * * " *Id.* at 572.

Certain of the cases cited in this opinion were decided in the context of commercial arbitration. Defendants contend that the Supreme Court in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), held that a court considering a case involving labor arbitration could not rely on cases involving commercial arbitration. This contention is based on a misinterpretation of the Court's holding.

The Court in Steelworkers v. Warrior & Gulf Co., *supra,* did not hold that a court considering a case involving a labor arbitration dispute could not consider prior arbitration cases involving commercial disputes. The Court merely pointed out that there are differences in the nature and purpose of labor arbitration and commercial arbitration which depending on the issue before the court could make holdings in the commercial context irrelevant in the labor context.

The issue before this court is which of several labor arbitration decisions should be final and binding. There is nothing so peculiarly different between a commercial arbitration dispute and a labor arbitration dispute that would make the general principles regarding finality enunciated in the cases cited in this opinion, even though pronounced in the commercial context, any the less applicable to the instant question in the labor context.

Defendants imply that for the court to hold that the Committee's February 5, 1968 decision is final and binding that the court must base its holding on the doctrines of collateral estoppel and res judicata which doctrines defendants contend do not apply to an arbitral board's decisions. The court's holding in this case is not based on the doctrines of collateral estoppel and res judicata except to the extent that there are similarities between these doctrines and the well-recognized doctrine of arbitral finality which is the basis of the court's holding in this case.

It should be further noted that even though defendants' contention that an arbitral agency is not subject to the doctrines of collateral estoppel and res judicata may be viable, it is not sufficient for defendants without supporting rationale to base such a contention on prior court holdings that these doctrines do not apply to administrative agencies. It does not necessarily follow that the principles which the courts apply to the proceedings of a governmental agency such as the National Labor Relations Board or the Immigration and Naturalization Service are also applicable to the proceedings of an arbitral board.

Defendants contend that a recent decision by the Eighth Circuit Court of Appeals, Hood v. Red Ball Motor Freight, Inc., 416 F.2d 1242 (Oct. 3, 1969), is directly in point with the instant case and that the holding therein supports defendants' argument that the Committee in the instant case had the authority to reverse its February 5, 1968 decision. The Eighth Circuit's ruling does not control this court's disposition of the instant case, but it is interesting to note that if it did, it would support rather than cut against the court's decision in this case.

In Hood v. Red Ball Motor Freight, Inc., *supra*, the Southwest Joint Area Grievance Committee had first decided in May of 1966 that the plaintiff drivers were to be placed on the seniority roster in the positions which they sought. Thereafter, drivers who were affected by that decision filed a grievance. The Southwest Committee heard the matter again in June of 1966, and reached the opposite result, placing the plaintiff drivers at the bottom of the seniority roster.

The plaintiffs then filed a lawsuit in federal district court contending that the May 11, 1966 decision should be final and binding. Defendants contended that the June 16, 1966 decision was final and binding. The district court held that the June 16, 1966 decision was correct and dismissed the complaint. The court of appeals in a per curiam opinion affirmed the district court's decision.

On the surface the facts in Hood v. Red Ball Motor Freight, Inc., *supra*, are similar to those now before the court and appear to support defendants' contention. However, an examination of the district court's unreported opinion, Hood v. Red Ball Motor Freight, Inc., CR–68–C–33 (E.D.Ark., W.D., Sept. 17, 1968), reveals that the facts are not in point and the reasoning applied by the Arkansas district court, and affirmed by the circuit court of appeals is consistent with that applied in the instant case.

The Arkansas district court concluded that the Southwest Committee's second award made June 16, 1966, should be enforced because: (1) new evidence was presented to the Southwest Committee at the June hearing which showed that the May award was based upon a mistake regarding the applicability of a provision of the arbitration agreement; (2) all interested parties were not given notice of the May hearing; and (3) the time between the two hearings was so short (approximately one month) that plaintiffs' (who had been hired by Red Ball only a month before the first hearing) rights to seniority with Red Ball had not vested.

In the instant case no new issues were presented for the Committee's consideration at the June 25, 1968 hearing; all interested parties received notice of the February 5, 1968 hearing; and the seniority rights of plaintiffs who had been employed by Mercury for nine or ten years had vested before the Committee's June, 1968, hearing. Thus, in the instant case consideration of the very factors which led the Arkansas district court and ultimately the Eighth Circuit to uphold the Southwest Committee's reversal of its original award compels this court to enforce the instant Committee's original award.

One could argue and plaintiffs indirectly do argue that the April 6, 1961 decision is the decision that should be considered final and binding. The gist of this argument is that Mercury's addition of modified seniority did not present a new issue for the Committee's consideration insofar as plaintiffs' and defendants' respective seniority rights were concerned; and even though it is sensible that the Committee ruled in plaintiffs' favor in February of 1968, it is really of little significance how the Committee ruled at that time for this court is bound to enforce the 1961 award as final and binding.

This argument is not without merit; and if it were not for the fact that the practical consequences of the court's holding that the Committee's decision of February 5, 1968, is final and binding are the same as the court's holding that the Committee's decision of April 6,

1961, is final and binding, then the court might be more disposed to accept this argument. However, in light of the evidence before the court at this time, the court is persuaded that it is reasonable that the addition of modified seniority could have been interpreted as a new issue in the battle between plaintiffs and defendants for seniority. Therefore, the Committee's February 5, 1968 decision is deemed final and binding.

An order will be entered requiring Mercury to publish and post a new seniority roster placing defendants in relation to the plaintiffs in the same position as they were on the seniority roster dated February 16, 1968.

 Plaintiffs have prayed for a reasonable attorney's fee for enforcing their rights. Such fees are allowable in the event the defendants have acted arbitrarily and without justification. Cutler v. American Federation of Musicians of United States and Canada, 231 F.Supp. 845 (D.C.1964); and Local No. 149 I.U., A.&A.I.W. v. American Brake Shoe Co., 298 F.2d 212 (4 Cir. 1962).

The court finds that it is not justified in setting an attorney's fee for plaintiffs as claimed due to the fact that there is not sufficient evidence that defendants acted arbitrarily and without some justification.