**Carl H. SHARP**

v.

**RYDER TRUCK LINES, INC., International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Teamsters Local 519, Murl C. Clabough, George E. Kenner, Melvin Keck, Fred Cook, James F. Garrett, K. W. McRoy, and Maynard L. Trotterchaud.**

**Civ. No. 3–78–233.**

United States District Court,
E. D. Tennessee, N. D.

Jan. 16, 1979.

---

J. Terry Holland, Knoxville, Tenn., Mark Young, Chattanooga, Tenn., for plaintiff.

Ben W. Williamson, Jr., Knoxville, Tenn., Peter Reed Corbin, John F. Dickinson, Jacksonville, Fla., Cecil D. Branstetter, Nashville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action has been brought pursuant to Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) alleging breach of a collective bargaining agreement. Most of the facts have been stipulated. The issue before the Court is whether a labor arbitration board has the authority to

reverse its previous decision regarding a seniority dispute.

Defendant Ryder Truck Lines employs two categories of drivers, "city" drivers and "over-the-road" drivers. Separate seniority rosters are maintained for each group, so that a driver transferring from one group to the other loses any accumulated seniority in his former group and acquires the status of a "new-hire."

The controversy in this case stems from Ryder's decision in early 1976 to hire eight new "over-the-road" drivers. The new positions were first offered to two laid-off city drivers at the bottom of the city seniority list. These two drivers accepted the new job immediately. Thereafter, plaintiff and two other city drivers filed grievances with the Southern Multi-State Grievance Committee, claiming they should have been offered these new over-the-road jobs first, in the order of their city seniority. Ryder immediately offered the remaining over-the-road jobs to these city drivers. The other two city drivers transferred right away. Plaintiff, however, refused to transfer to the new over-the-road positions until his grievance, which would determine his over-the-road seniority status, was acted on. Plaintiff at this time had more city seniority than any other driver wanting the new over-the-road jobs. Therefore, if plaintiff's grievance were sustained, he would be entitled to seniority over the other seven slots since he should have been offered the job first. The remaining over-the-road positions were all filled with "new hires" before plaintiff's grievance was acted on, and before plaintiff actually transferred.

The Grievance Committee sustained plaintiff's grievance claim. Shortly thereafter plaintiff transferred from his city job to the over-the-road job. A new over-the-road seniority roster listed plaintiff's name first among the eight new over-the-road drivers in accordance with the Committee decision. After this list was posted, the seven drivers who actually started working as over-the-road drivers before plaintiff, filed a grievance asking that plaintiff's name be placed last, as he was the last to begin work. This grievance was denied by the arbitration panel on June 22, 1977.

Afterwards, Fred Cook, one of these same seven drivers, filed another grievance claiming plaintiff had been building seniority on both the city list and over-the-road list at the same time, in violation of the collective bargaining agreement. The Grievance Committee sustained this grievance, in effect reversing itself. The Committee ordered that plaintiff be given seniority as of the date of his actual transfer, placing him last among the eight new slots. Plaintiff filed a grievance about this, but the Committee held the grievance was improperly before it.

Plaintiff now brings this suit, claiming the Grievance Committee decisions adverse to his seniority status are void under the terms of the collective bargaining agreement.

Article 44, Section 1(a) of the National Master Freight Agreement and Southern Conference Area Over-The-Road Supplemental Agreement, provides as follows:

"Where a State or Multiple State Committee, by a majority vote, settles a dispute no appeal may be taken to the Southern Conference Area Grievance Committee. *Such decision will be final and binding on both parties.*" (emphasis added)

Absent some element of deceit or bad faith on the part of an employee's union representative before the arbitration board, the decision of the arbitration board as to an employee's grievance is final and binding on that employee, precluding him from trying to relitigate the merits of his grievance in the courts. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1975). Although the defendant union in this case may have mistakenly pursued a claim on the part of an employee bound by an earlier arbitration decision, there is nothing in the record of this case showing any bad faith or deceitful action on the part of the union toward plaintiff. Indeed, the record suggests the Union's mistake, if a mistake at all, was nothing but a good faith effort on the part

of the Union to actively pursue *all* employee grievances even when the grievance may be adverse to the interests of other union members. Whether the Union is required to go that far in pursuing the grievances of its members is doubtful, *see Humphrey v. Moore*, 375 U.S. 335, 349–350, 84 S.Ct. 363, 11 L.Ed.2d 370 (1963), but this Court cannot say the Union was being unreasonable or acting in bad faith in doing so. *Cf. Hines v. Anchor Motor Freight, Inc., supra*. Accordingly, this Court finds no basis for challenging *any* of the successive Grievance Committee decisions in this case on the ground of unfair union representation.

The only remaining question to be decided, then, is which of the successive Grievance Committee decisions is the final and binding one in this case. In view of the absence of a transcript of the June, 1977, Committee proceeding at which all eight employees involved in this case were parties, the Court does not feel the record is sufficient to determine whether new issues were presented to the Committee in the Fred Cook grievance in which the Committee reversed itself. However, the Court does not view that deficiency in the record as essential to the decision of this case.

The question of which arbitration decision of several successive decisions is final and binding is one of interpretation of the finality clause in the contract. The question of which of the Grievance Committee's several decisions is final and binding is a matter for arbitration itself. The finality clause is as much a part of the contract as other provisions subject to interpretation by the arbitrator. The Grievance Committee was acting within its power in deciding it was not bound by its earlier decisions. Whether that decision is correct is not for this Court to say. *General Drivers v. Riss & Company, Inc.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1962).

The Court is aware of the decision by Judge Allgood in *Parker v. Mercury Freight Lines, Inc.*, 307 F.Supp. 789 (N.D. Ala.1969). The fundamental point here is that whenever employers and employees agree to arbitrate their disputes as to interpretation of their collective bargaining agreement, and to abide by the arbitrator's decision, that agreement must be honored by the courts. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1959). The concept of employer-employee self government requires that controversies of this type, at least in the context of intra-Union disputes, be resolved exclusively through provided-for arbitration procedures.

The Court concludes that the decision of the Southern Multi-State Grievance Committee is final and binding and that this Court is without authority to change it. It follows that plaintiff's action must be dismissed.

Order Accordingly.